UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

KRISTI M. DANIEL,                          )
                                           )   No. CV-10-00271-CI
              Plaintiff,                    )
                                           )   ORDER GRANTING PLAINTIFF'S
v.                                         )   MOTION FOR SUMMARY JUDGMENT
                                           )   AND REMANDING FOR ADDITIONAL
MICHAEL J. ASTRUE,                         )   PROCEEDINGS
Commissioner of Social                     )
Security,                                  )
                                           )
              Defendant.                    )

BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF No. 13, 18.) Attorney Rebecca M. Coufal represents Kristi M. Daniel (Plaintiff); Special Assistant United States Attorney Willy M. Le represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. (ECF No. 6.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment, and remands the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

**JURISDICTION**

Plaintiff protectively filed for disability insurance benefits (DIB) and Supplemental Security Income (SSI) on February 20, 2007. (Tr. 136, 144.) She alleged disability due to hepatitis C, fibromyalgia, arthritis, pneumonia, hiatial hernia, extreme fatigue and memory loss, with an alleged onset date of November 4, 2006. (Tr. 186.) Her claim was denied initially and on reconsideration. (Tr. 82-85, 86-90.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on June 23, 2009, before ALJ R.J. Chester. (Tr. 126.) Plaintiff, who was represented

by counsel, medical expert Steven Gerber, M.D., and vocational expert Diane Kramer testified. (Tr. 33-72.) The ALJ denied benefits on August 14, 2009, and the Appeals Council denied review. (Tr. 11-22, 1-4.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. Plaintiff was 56 years old when she applied for benefits and 59 years old at the time of the hearing. (Tr. 136.) Plaintiff is college educated with a bachelor of arts degree in counseling psychology and a masters degree in applied behavioral science. (Tr. 48.) Plaintiff worked as social worker from 1990 to 2005 and in customer service as a telemarketer. (Tr. 175.) Plaintiff testified she is not married and lives alone in an apartment with her service dog. (Tr. 46.) Plaintiff testified she stopped working as a social worker in 2005 because she was getting sick frequently and not recovering from her sickness. (Tr. 49.) Plaintiff's position as a telemarketer ended when Plaintiff either quit or was discharged due to excessive absence from her impairments. (Tr. 49, 250-53.) Plaintiff also attempted a trial of work in 2007 that lasted for three weeks because she ended up in the hospital. (Tr. 48, 51.) Plaintiff was diagnosed with hepatitis C in 1996 and underwent interferon about that time, but was unable to tolerate the treatment due to neutropenia. (Tr. 568-72.) Plaintiff was once again treated with interferon beginning in November 2007. (Tr. 850.) At the time of the hearing, Plaintiff testified she had been receiving on and off interferon treatment for the past 18 months. (Tr. 51.) Plaintiff's

records indicate her interferon treatment was suspended due to Plaintiff's neutropenia. (Tr. 1088.)

Plaintiff alleges her interferon treatment for hepatitis C prevents her from working now. (Tr. 51.) Plaintiff testified the interferon treatment prevents her from working because of the side effect of neutropenia and the resulting need to avoid exposure to germs. (Tr. 52.) Plaintiff testified she had been undergoing interferon treatment for 18 months at the time of the hearing. (Tr. 51.) Plaintiff states a caregiver helps with many household chores including filling out forms and other paperwork, but that Plaintiff usually does her own laundry. (Tr. 52, 55-56, 66.) Plaintiff testified to several hospitalizations for bronchitis and pneumonia. (Tr. 34-36, 44, 60, 62.) Plaintiff reports a walker was prescribed by her neurologist for idiopathic polymorphic peripheral neuropathy. (Tr. 44, 46.) Plaintiff testified to occasional use of a cane and use of a service dog. (Tr. 46.) Plaintiff states she went from a baseline weight of 134 in January 2008 to a low weight of 89 pounds and finally regained some weight to be 102 pounds at the time of the hearing. (52-53, 58-59.) Plaintiff is 4 foot 11 3/4 inches tall and had shrunk two to three inches in the last two years likely due to osteoporosis which was scheduled to be evaluated. (Tr. 52.) Plaintiff also testified to cramping in her right hand after use. (Tr. 57.) Plaintiff states she has trouble with pain and "a general fatigue malaise" where she can't do anything, including focus which can sometimes lead to staying in bed for five or six days. (Tr. 60-61.) Plaintiff testified to difficulty in changing positions from sitting to standing, particularly if she does so frequently. (Tr. 63.) Plaintiff states she could probably lift a carpenter's hammer

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS - 3

1   but would have a hard time holding on to it. (Tr. 63-64.)
2   Plaintiff also testified to difficulty remembering things. (Tr. 49,
3   50-51, 64.)

4                       **ADMINISTRATIVE DECISION**

5       ALJ Chester found Plaintiff's date of last insured for DIB
6   purposes is December 31, 2011. (Tr. 13, Finding 1.) At step one,
7   the ALJ found Plaintiff had not engaged in substantial gainful
8   activity since November 4, 2006, the alleged onset date, other than
9   an unsuccessful three week trial of work in 2007. (*Id.*, Finding 2.)
10  At step two, he found Plaintiff had severe impairments of hepatitis
11  C; mild degenerative disc disease, lumbar spine; and fibromyalgia.
12  (*Id.*, Finding 3.) The ALJ concluded Plaintiff's mental impairments
13  of anxiety and depression were non-severe and her diagnosis for
14  chronic obstructive pulmonary disease was not supported by the
15  objective medical evidence. (Tr. 15.) The ALJ determined at step
16  three Plaintiff's medically determinable impairments, alone and in
17  combination, did not meet or medically equal one of the listed
18  impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4
19  (Listings). (Tr. 16.) The ALJ found Plaintiff's subjective
20  complaints regarding functional limitations were not fully credible.
21  (Tr. 18.) At step four, he determined Plaintiff could perform
22  sedentary work, but could only occasionally lift 10 pounds and
23  frequently lift less than 10 pounds. (Tr. 16, Finding 5.) The ALJ
24  also found Plaintiff could stand or walk at least 2 hours of an
25  eight-hour day and sit for about 6 hours of an eight-hour day.
26  (*Id.*) The ALJ also found Plaintiff was limited to only occasional
27  stair climbing and must avoid climbing ladders, ropes or scaffolds
28  and any concentrated exposure to fumes, odors, dusts or gases,

1   unprotected heights and moving machinery.   (*Id.*)   Relying on

2   vocational expert testimony, the ALJ determined Plaintiff could

3   return to her past relevant work as a social worker or customer

4   service representative because this work does not entail work-

5   related activities precluded by Plaintiff's RFC. (Tr. 21, Finding

6   6.)   As a result, the ALJ concluded Plaintiff was not under a

7   disability from November 4, 2006, to the date of his decision. (Tr.

8   22, Finding 7.)

9                        **STANDARD OF REVIEW**

10      In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the

11   court set out the standard of review:

12          A district court's order upholding the Commissioner's
            denial of benefits is reviewed *de novo*. *Harman v. Apfel*,
13          211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the
            Commissioner may be reversed only if it is not supported
14          by substantial evidence or if it is based on legal error.
            *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).
15          Substantial evidence is defined as being more than a mere
            scintilla, but less than a preponderance.  *Id.* at 1098.
16          Put another way, substantial evidence is such relevant
            evidence as a reasonable mind might accept as adequate to
17          support a conclusion.  *Richardson v. Perales*, 402 U.S.
            389, 401 (1971).  If the evidence is susceptible to more
18          than one rational interpretation, the court may not
            substitute its judgment for that of the Commissioner.
19          *Tackett*, 180 F.3d at 1098; *Morgan v. Commissioner of
            Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

20

21          The ALJ is responsible for determining credibility,
            resolving conflicts in medical testimony, and resolving
22          ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
            Cir. 1995).  The ALJ's determinations of law are reviewed
23          *de novo*, although deference is owed to a reasonable
            construction of the applicable statutes.  *McNatt v. Apfel*,
24          201 F.3d 1084, 1087 (9th Cir. 2000).

25      It is the role of the trier of fact, not this court, to resolve

26   conflicts in evidence. *Richardson,* 402 U.S. at 399.  If evidence

27   supports more than one rational interpretation, the court may not

28   substitute its judgment for that of the Commissioner. *Tackett*, 180

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS - 5

F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec. of Health and Human Serv.*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).

### SEQUENTIAL EVALUATION PROCESS

Also in *Edlund*, 253 F.3d at 1156, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS - 6

rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). This burden is met once a claimant establishes that a medically determinable physical or mental impairment prevents her from engaging in her previous occupation. 20 C.F.R. §§ 404.1520(a), 416.920(a). The claimant "must present 'complete and detailed objective medical reports of her condition from licensed medical professionals.'" *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999).

If a claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff argues the ALJ erred when he: (1) improperly relied on the opinion of medical expert Steven Gerber, M.D.; (2) found Plaintiff's chronic pain, anxiety, depression and chronic obstructive pulmonary disease ("COPD") were non-severe impairments; and (3) failed to find Plaintiff's impairments equivalent to a Listing. (ECF No. 14.) Defendant contends the ALJ's decision is supported by substantial evidence and free of legal error. (ECF No. 19.)

**DISCUSSION**

**A.   Improper Reliance on Medical Expert Testimony**

Plaintiff argues the ALJ erred by improperly relying on medical

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS - 7

consultant, Steven Gerber, M.D. (*Id.* at 13-15.)  The analysis and opinion of an expert selected by an ALJ may be helpful in his adjudication, and the court should not second guess the ALJ's resolution of conflicting medical testimony.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2nd 747, 753 (9th Cir. 1989)).  Unless the opinion of the medical expert is supported by independent evidence, it cannot by itself constitute substantial evidence.  *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996) (*citing Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). As to the opinions expressed by the ALJ's expert, it is the Government's responsibility to ensure the credibility, completeness, and quality of the resulting report.  *Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir. 1984).

Here, Dr. Gerber's testimony is not substantial evidence because he did not review the Plaintiff's entire medical record.  In light of this unreviewed evidence, Dr. Gerber's testimony is not supported by the record.  Dr. Gerber testified he reviewed medical evidence up to July 2008.  (Tr. 38.)  At the beginning of the hearing on June 23, 2009, the ALJ noted the records he had received (Tr. 324-869), and asked if the record was complete.  (Tr. 33-34.) Plaintiff's counsel stated Plaintiff's medical condition had deteriorated after July 2008 and asked if the record could be left open.  (Tr. 34.)  The ALJ agreed to leave the record open for 30 days.  (Tr. 36.)  On July 22, the ALJ informed Plaintiff's counsel that he had received additional medical evidence.  (Tr. 132-33.) However, there is no indication Dr. Gerber reviewed these additional

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS - 8

records or if he was asked if his prior opinion remained unchanged considering those records.

The post-hearing evidence consists of over 275 pages of medical records, and covers the period from June 2008 to June 2009. These records include documentation of Plaintiff's 2008 and 2009 hospital visits (Tr. 873-88, 903-1001), prescription of Plaintiff's walker and 3-pronged cane (Tr. 892), treatment records from Plaintiff's neurologist, C. William Britt, M.D. (Tr. 891-902), treatment records from Group Health (Tr. 1002-1054), and records from Plaintiff's treatment of hepatitis C (Tr. 1055-1149). These records support Plaintiff's allegations at the hearing that she had "recent deterioration" which was not reflected in the evidence Dr. Gerber did review. (Tr. 34.) Further, in response to questions about whether Plaintiff's impairments are equivalent to a Listing, Dr. Gerber stated Plaintiff had only one recent hospitalization for pneumonia. (Tr. 40.) However, the record in its entirety reflects Plaintiff was hospitalized six times with either bronchitis, pneumonia or suspected pneumonia. (February 2007 at Tr. 325-77; June 2007 at Tr. 503-28; October 2007 at Tr. 567-88; March 2009 at Tr. 986-1001; April 2009 at Tr. 874-88; and June 2009 at Tr. 904-23.) In light of this evidence, Dr. Gerber's hearing testimony is not supported by the record and, therefore, is not substantial evidence.

The new evidence is also inconsistent with Dr. Gerber's testimony the record did not support Plaintiff's need for a walker or other assistive device. During the hearing, the ALJ states, "The claimant [was] using a walker when she came in this morning. Did you see any support in the record for that?" (Tr. 39.) Dr. Gerber

responded, "No." (*Id.*) However, some time prior to March 2009, Dr. Britt prescribed a "four-wheeled walker with a seat and a three-pronged cane." (Tr. 892.)

In short, the post-hearing records received by the ALJ do not support Dr. Gerber's testimony. A medical expert's testimony is not substantial evidence unless it is supported by other medical evidence in the record. *Tonapetyan*, 242 F.3d at 1148-49; *Lester*, 81 F.3d at 831. An ALJ's decision cannot stand unless supported by substantial evidence. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Because there is not substantial evidence to support the ALJ's decision, this matter must be remanded for new medical expert[1] testimony based on the entire record reviewed by the ALJ. While this error alone requires remand, Plaintiff alleged additional errors. To aid the ALJ on remand, the court next addresses these allegations.

**B.    Step Two Findings**

Plaintiff contends the ALJ erred when he concluded Plaintiff's anxiety, depression, chronic pain, and COPD were non-severe at step two because substantial evidence does not support this finding. (ECF No. 14 at 10-12.) At step two of the sequential evaluation, the ALJ determines whether a claimant suffers from a "severe" impairment, *i.e.*, one that significantly limits her physical or

_____

[1] The court also notes Dr. Gerber is certified in internal medicine and cardiovascular disease. (Tr. 38.) Plaintiff's most debilitating impairment seems to be hepatitis C and its side effects. The ALJ should find a medical expert, that the record reflects, is qualified to opine as to hepatitis C.

mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1508, 416.908. The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe" as defined by the Social Security regulations. *See, e.g., Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001). "An impairment or combination of impairments can be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (*quoting Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)).

### 1. Mental Impairments

Plaintiff argues the ALJ erred in rejecting her anxiety and depression as severe impairments. (ECF No. 14 at 11.) Mental impairments are generally considered not severe if the degree of limitation in the three functional areas of activities of daily living, social functioning, and concentration, persistence or pace is rated as "none" or "mild" and there have been no episodes of decompensation. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). The ALJ determined Plaintiff's limitations in the three functional areas were mild and Plaintiff had no episodes of decompensation. (Tr. 15.) The ALJ's finding is supported by substantial evidence.

For example, in February 2008, Dr. Cohen noted Plaintiff was not having significant depression even with the interferon

treatment. (Tr. 1063.) In July 2008, Dr. Cohen noted Plaintiff was feeling less depressed off antidepressants than she was when on them. (Tr. 1088.)

As to Plaintiff's anxiety, although the record indicates Plaintiff was no longer taking antidepressants, she was taking Klonopin[2] for her anxiety disorder. (Tr. 871.) However, Plaintiff's treatment records do not show Plaintiff has complaints about anxiety beyond getting refills for her medication. (Tr. 804-05.) Because impairments which are well-controlled with medication may be properly found non-severe, the ALJ did not err. *Warre v. Comm. of the Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (stating "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits"). Since substantial evidence supports the ALJ's finding that Plaintiff's mental disorders are not severe, the ALJ has not erred.

**2. Chronic Pain**

Plaintiff contends the ALJ erred in rejecting her chronic pain as a severe impairment at step two. (ECF No. 14 at 11.) However, Plaintiff's argument is unavailing because the ALJ found Plaintiff's fibromyalgia to be a severe impairment. (Tr. 13.) Fibromyalgia includes chronic pain as a symptom.[3] Therefore, the court reasonably

---

[2] Klonopin is the brand name of the generic clonazepam which is a benzodiazepine "used to relieve panic attacks," www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000635.

[3] Symptoms of fibromyalgia include chronic muscle pain, spasms or tightness, limb weakness, leg cramps, fatigue and decreased

may infer that ALJ's step two finding of fibromyalgia as severe
subsumes a finding of severe chronic pain. *Burch v. Barnhart*, 400
F.3d 676, 679, 682 (9ᵗʰ Cir. 2005).

**3. COPD**

Plaintiff also challenged the ALJ's finding that Plaintiff's
COPD is not severe. (ECF No. 14 at 11.) The ALJ relied on Dr.
Gerber's testimony to make this finding. (Tr. 15.) Dr. Gerber
opined Plaintiff did not have COPD because she has had normal lung
function tests. (Tr. 15, 19, 39, referencing Tr. 796.) However,
the record also indicates Plaintiff's primary care physician Dr.
Sayres diagnosed COPD, in spite of her pulmonary function test.
(Tr. 289, 1051.) As stated above, numerous medical records were
received post-hearing which the medical expert, Dr. Gerber, did not
review. Because these records show diagnosis of COPD, even with
what Dr. Gerber found to be normal pulmonary function, and include
hospitalizations for pneumonia and bronchitis described as
exacerbating Plaintiff's COPD (Tr. 594), there is not substantial
evidence to support the ALJ's determination Plaintiff's COPD is non-
severe.

Further, even if the ALJ was correct in determining Plaintiff
either did not have COPD or that her COPD was non-severe, as
Defendant points out, an error at step two is only harmless when the
ALJ continues to consider all of Plaintiff's impairments in
combination throughout the sequential evaluation process. *Burch*,
400 F.3d at 676. On *de novo* review, the court notes the ALJ failed

energy, among other complaints. *See* www.webmd.com/fibromyalgia/
understanding-fibromyalgia-symptoms.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS - 13

to consider symptoms from all of Plaintiff's diagnosed impairments, including COPD, in combination throughout the sequential evaluation process. Therefore the errors alleged here, if any, cannot be considered harmless. *Id.* (finding errors harmless because ALJ considered claimant's obesity at steps three and five). The failure to consider Plaintiff's impairments in combination is particularly prejudicial in the ALJ's decision at step three.

**C.   Step Three - Equivalence**

Plaintiff argues the ALJ erred by not finding Plaintiff's impairments met or equaled a Listed Impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (ECF No. 14 at 12-15.) The Commissioner has promulgated a "'Listing of Impairments' . . . considered so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform [her] past relevant work or any other jobs." *Lester,* 81 F.3d 821 at 828. A claimant is "conclusively disabled if [his] condition *either* meets *or* equals a listed impairment." *Id.* (citing 20 C.F.R. § 404.1520(d)). Medical equivalence will be found "if findings related to your impairments are at least of equal medical significance to those of a listed impairment." 20 C.F.R. §§ 404.1526(b)(3), 416.926(b)(3). Equivalence is determined on the basis of a comparison between the "symptoms, signs and laboratory findings" about the claimant's impairment as evidenced by the medical records "with the medical criteria shown with the listed impairment." 20 C.F.R. §§ 404.1529(d)(3), 416.929(d)(3).

If a claimant has more than one impairment, the Commissioner must determine "whether the combination of impairments is medically equal to any listed impairment." 20 C.F.R. §§ 404.1526(b)(3),

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS - 14

416.926(b)(3). The claimant's symptoms "must be considered in combination and must not be fragmentized in evaluating their effects." *Lester,* 81 F.3d at 829 (citations omitted). The failure to do so is legal error requiring remand. *Id.* at 830.

In the decision, the ALJ must make specific findings about equivalency only when the claimant presents a reasonable theory as to how her impairments meet or equal the Listings. *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (finding no error when ALJ did not make detailed findings regarding equivalency because claimant "has offered no theory, plausible or otherwise, as to how his seizure disorder and mental retardation combined to equal a listed impairment"). If the Plaintiff presents a theory of equivalency, "the ALJ must explain adequately his evaluation of . . . the combined effects of the impairments." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).

In explanation of his step three findings, the ALJ states:

> The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. . . .
>
> The medical evidence indicates that the claimant has: hepatitis C; mild degenerative disc disease, lumbar spine; and fibromyalgia, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. Furthermore, no treating or examining physician has mentioned findings that meet or are equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical signs or findings that are the same or equivalent to those of any listed impairment, specifically sections 1.00, Musculoskeletal System disorders, and 5.00 Digestive System disorders.

(Tr. 16.)

The ALJ's statement above lacks sufficient detail to determine

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS - 15

why Plaintiff's combination of impairments do not meet or equal a Listing.   The ALJ found Plaintiff had several severe impairments including hepatitis C, mild degenerative disc disease and fibromyalgia.   In addition, the ALJ also found Plaintiff had non-severe anxiety and depression, chronic pain and COPD.   Further, the record shows many of Plaintiff's severe and non-severe impairments include side effects from treatment (like neutropenia from use of interferon to treat hepatitis C-see Listing 7.15) or symptoms of the disease (like weight loss similar to Listing 5.06 or 5.08).   In addition, the record indicates Plaintiff takes a significant amount of pain medication to treat her pain from neutropenia, fibromyalgia, and idiopathic polymorphic peripheral neuropathy,[4] including morphine

---

[4] "Peripheral neuropathy is disorder of nerve(s) apart from the brain and spinal cord. Patients with peripheral neuropathy may have tingling, numbness, unusual sensations, weakness, or burning pain." www.medicinet.com/peripheralneuropathy/article.htm#1whatis.   While the ALJ states this condition is associated with Plaintiff's hepatitis C and is "dramatically better on Neurontin" (Tr. 19, referencing Tr. 1139), this finding is not supported by the record. For example, Dr. Cohen notes:

> [Her peripheral neuropathy] was present prior to the presentation of interferon, and [treating providers] do not feel it is related to her hepatitis C either.   She is cryoglobulin-negative.   They feel it is an idiopathic peripheral neuropathy, which seems fairly progressive, as it antedated the presence of interferon and would be clearly unrelated to that.   Although they feel it is not hep C-related, if it were, then she is on appropriate management, as well.

(Tr. 1129.)   The ALJ offers no reason for rejecting Plaintiff's treating physician's conclusion as to the peripheral neuropathy.

and oxycodone.   There is no indication the ALJ considered these factors in determining if Plaintiff's impairments in combination meet or equal a listed impairment.

At the hearing, Plaintiff's attorney cross-examined Dr. Gerber as to Plaintiff's bouts of pneumonia, referring to the Listings. (Tr. 41-42.)  In a letter to the ALJ after the hearing, Plaintiff's first attorney, Larry Weiser, offered a number of theories to establish equivalency to a Listed impairment.  (Tr. 314-320.)  These same theories of equivalency were noted in a letter brief to the Appeals Council.   (Tr. 321-23.)   Unlike the claimant in *Lewis*, Plaintiff argued for a claim of disability based on the Listings.

As discussed above, the expert testimony of Dr. Gerber is not

---

*See Andrews,* 53 F.3d at 1043 (finding a contradicted medical opinion can only be rejected for "specific and legitimate reasons" that are supported by substantial evidence in the record).   In addition, the ALJ states Plaintiff's neurological testing continues to be normal. (Tr. 19, referencing Tr. 899-902.)   However, Dr. Britt found:

    1.  Right ulnar neuropathy with conduction delay across
    the elbow.

    2.  Normal digital sensory action potentials of the right
    median nerve.

    3.  Low amplitude of the compound muscle action potential
    of the right peroneal nerve.

    4.   Absent sensory action potentials of the right sural
    and superficial peroneal nerves.

    These latter two findings are most compatible with a
    peripheral polyneuropathy of axonal origin.

(Tr. 894.)  The ALJ's failure to address this evidence is error and must be corrected on remand.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS - 17

substantial evidence, and the ALJ must use the expertise of a medical expert if he determines a claimant may have an impairment which meets or equals the Listings.   Social Security Regulation ("*SSR*") 96-6p.[5]   (while an ALJ is not bound by the opinion of a program physician as to whether an impairment is equivalent in severity to a Listed impairment, "longstanding policy requires that the judgment of a physician . . . designated by the Commissioner on the issue of equivalence on the evidence before the ALJ . . . must be received into the record as expert opinion evidence and given appropriate weight").   Because the ALJ fails to specifically discuss how Plaintiff does not meet or equal the Listings, fails to discuss Plaintiff's impairments in combination and has no adequate medical expert testimony to support the step 3 determination, the ALJ's decision must be reversed.

### CONCLUSION

The errors alleged require reversal as discussed above. However, the court makes no opinion as to whether Plaintiff should be found disabled.   While this court may remand for an immediate award of benefits, this should be done when "the record has been developed fully and further administrative proceedings would serve

---

[5]   Social Security Rulings are issued to clarify the Commissioner's regulations and policy.   They are not published in the federal register and do not have the force of law.   However, under the case law, deference is to be given to the Commissioner's interpretation of the Regulations.   *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 n.2 (9th Cir. 2005); *Bunnell v. Sullivan*, 947 F.2d 341, 346 n.3 (9th Cir. 1991).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS - 18

no useful purpose." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (*citing Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996); *Varney v. Sec. of Health and Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988). As the ALJ's decision (1) relied on medical expert testimony that is not based on the entire record before the ALJ, and (2) fails to adequately consider all of Plaintiff's impairments in combination throughout the sequential evaluation, remand for additional proceedings is warranted. *McAllister v. Sullivan*, 888 F.2d 599 (9th Cir. 1989). On remand, the ALJ is directed to ensure the expert has reviewed all of Plaintiff's evidence, to take full and detailed expert testimony regarding equivalency, and to complete a new sequential evaluation as the current one is tainted by errors.

In addition, Plaintiff alleges numerous non-exertional limitations such as loss of memory and difficulty with persistence and pace. The consultative examination with Jay M. Toews, Ed.D., recommends further testing for both physical capacity and mental impairment determination. (Tr. 741.) The ALJ should ascertain the extent of Plaintiff's physical capacity and non-exertional limitations to make an appropriate RFC determination on remand. Finally, throughout the new sequential evaluation, the ALJ must fully consider Plaintiff's impairments in combination and not fragmentize the analysis according to a particular impairment. *See Lester*, 81 F.3d at 829. Accordingly,

IT IS ORDERED:

1.   Plaintiff's Motion for Summary Judgment **(ECF No. 13)** is **GRANTED** and the matter is remanded to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g) and consistent with this decision.

    2.    Defendant's Motion for Summary Judgment **(ECF No. 18)** is **DENIED.**

    3.    Application for attorney's fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for **PLAINTIFF** and the file shall be **CLOSED.**

DATED December 12, 2011.

                S/ CYNTHIA IMBROGNO
           UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS - 20